## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | |
|---|---|
| SUSAN AMANDA BOHANNON, | |
| Plaintiff, | |
| CAPTAIN DAVID GIBSON, in His Individual and Official Capacities; SPALDING COUNTY, GEORGIA, | CIVIL ACTION FILE NO. 3:16-cv-39-TCB |
| Defendants. | |

## DEFENDANT GIBSON'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW DAVID GIBSON, Defendant herein, and files and serves this his Brief in Support of Motion for Summary Judgment, showing the Court as follows:

## I.      INTRODUCTION

Discovery not only cleared up most of the vagaries in Plaintiff's Amended Complaint, it also provided testimonial evidence showing that no federal constitutional or state law tort occurred within the applicable statute of limitations. For those actions that do fall within the applicable statute of

limitations, same do not rise to the level of an actionable federal constitutional or state law tort, and summary judgment is warranted.

This is the case of Susan Amanda Bohannon.  She claims that since 2006, she has been physically in the same place as Defendant (and former Spalding County Sheriff's Department Captain) David Gibson some seven-eight times, three or four of them resulting in some form of sexual encounter – just one of those four times occurring within the applicable statute of limitations.

In the Facts section of this Brief, Defendant will address the alleged encounters chronologically, according to the evidence, first addressing those claims barred by the two-year statute of limitations.  Defendant will then turn to any allegation that may be actionable, time-wise.

In his Argument and Citation of Authority, this Defendant will show why the vast majority of Plaintiff's claims are time-barred, and why the one instance occurring within the limitations period by no means rises to the level of an actionable tort of any kind. The merits of the case are addressed in accordance with Defendant's qualified immunity defense, raised *ab initio* since his first appearance in the case.

In all, Defendant is satisfied that the evidence in the case, supplanting the now far-better explained (away) allegations set forth in Plaintiff's Amended

Complaint, simply do not show there exists any disputed material fact, and do not show she is otherwise entitled to relief in this action.   Summary judgment is warranted.[1]

## II. <u>FACTS</u>

### A.  Time-Barred Claims

Plaintiff filed suit on February 29, 2016.  For those 42 U.S.C. Sec. 1983 suits brought in the State of Georgia, there is a two-year statute of limitations, rendering nearly all of Plaintiff's claims time-barred.

#### 1.  2006

In 2006, Plaintiff alleges that during a traffic stop, Defendant cuffed her while she was outside the vehicle for having given him false birthdate information.  (Bohannon Dep. 63:5¬66:25).   While she disagrees about whether she in fact gave an improper date, there is no evidence that the police dispatch information sent to Gibson showed a different birthdate for her.

---

[1] Plaintiff sues Defendant Gibson in both his individual and official capacities.  A suit against a public official in his/her official capacity is nothing more than another way of suing the public entity for whom that official works. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). The suit here against Gibson in his official capacity being redundant to the claim against Defendant Dix in his official capacity, the official capacity claim against Gibson should be dismissed. This, even if Dix is dismissed, as the proper Defendant there would in fact be the public entity for whom Gibson worked.

Regardless, Defendant allegedly released Plaintiff on-site, purportedly having agreed they would meet later to have sex.  Plaintiff did not show.  *Id*.

## 2.  2007

In 2007, Plaintiff had an encounter with Defendant when he was working as a bouncer at a local bar called GTO's.  (Bohannon Dep., pp. 103-04)  Plaintiff testified she was there with her boyfriend, and they were both way too drunk to drive.  Defendant had addressed them both for dancing too provocatively on the dance floor.  Drunk, and her wearing no panties, the visual does not take much imagination. (Bohannon Dep. 105:12-106:5)

Later, when Plaintiff and her boyfriend were leaving, heading for his truck, Defendant stopped them from getting into the vehicle.  When they said they were going to call for a certain service, Defendant supposedly told them it had shut down for the night, and offered them a ride to their home.  Plaintiff got in the front seat, her boyfriend in the back.  *Id*.

During this ride, Defendant allegedly stuck his finger into Plaintiff's vagina.  Whereas the Complaint indicates she did everything in her power to fend him off, in her deposition, Plaintiff says she did the complete opposite, freezing up and doing nothing to stop the encounter.  (Bohannon Dep., pp. 106-07).  Once

home, she and the boyfriend argued about what happened, each wanting to know why the other didn't stop it.  (*Id*.; 108:12-13).

### 3.  Traffic Stops, 2007; 2012

Albeit contained in scattered testimony, Plaintiff alleges that Defendant twice pulled her over for the specific purpose of having her commit sexual acts with him.  One time she did, the other she was able to talk him out of it.  (77:23-78:1).

Of the few encounters (including once or twice in chance, non-traffic related incidents) that happened during this time span, Plaintiff testified that Defendant was constantly asking for sex, saying that he was tired of being "put off."  As mentioned, she acceded to his requests during this time apparently only once – a hand job. ( *Id*.).

Within six months to a year of their initial encounter at GTO's, Defendant supposedly pulled her over and said that he had heard she was telling people about their encounter in the car that night.  According to Plaintiff, Defendant told her that he would not lose his job, would not lose his family, and would fuck her up if she told the "city" about what had happened.  (Bohannon Dep. 76:2-4).

Later, in 2012, in the second of the two traffic stops, Defendant supposedly again threatened Plaintiff to keep quiet, this time to include vague reference to

interfering with her children's truancy cases, and her daughter's rape case. (Bohannon Dep. 78:20-79-10).

### 4. 2010

In 2010, Defendant purportedly came to Plaintiff's home, where he was met by several Bohannon family members (including two minors) and others (totaling four (4) people), while supposedly performing a welfare check. (Bohannon Dep. 110:16-111:13; 113:20-22). Plaintiff testified the front door was open, but has no idea who may have let him in that night. (Bohannon Dep. 112:12-14).

At some point while he was there, he allegedly opened her bedroom door, only to find her having sex with her boyfriend, with the back door to the house open. (Bohannon Dep. 113:6-7). Gibson supposedly jawboned with the couple for a minute and left without incident.

### B. Claims Accruing Inside, and *Possibly* Inside the Limitations Period

Apparently, the two ran into each other a time or two in passing, Defendant asked for sex, told her he would not be put off, she would repel his advances, and he would go off quietly into the night. There is even testimony he came over once while she and her boyfriend were alone, shot the breeze, and left.

There is no evidence Defendant threatened Plaintiff at any time after the 2012 encounter.  Gibson would push for sex, she would say no, and that would be that.

Once, though, on a night in 2015 Plaintiff was staying with two of her friends.  (Bohannon Dep. 46:1-9; 47:9-14). Gibson came to the residence, asked for oral sex, she assented and the two walked out to his car.  *Id.*  But, not before Defendant asked the male resident to follow behind them and pick her up when they were done.  Both residents got in a car and followed.  (Bohannon Dep. 48:20-23; 49:16-20).

While driving down the road, Plaintiff performed fellatio on Defendant.  When they were done, he dropped her off, her friends picked her up, and that was that.

Plaintiff testified that Defendant did not force her to have oral sex with him, did not force her out of the home and into the car.  Rather, she just figured that she'd go with him this time just to appease him.  (Bohannon Dep. 144:3-8.)

### III.   ARGUMENT AND CITATION OF AUTHORITY

#### A.  Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support his assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The burden then shifts to the non-moving parties, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc*., 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving parties do not satisfy their burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50).

**B.  Color of Law**

Asking for (and sharing) sex is not in and of itself a Constitutional tort.  But, before getting into what is and is not substantively actionable, we first must remember that for liability to *ever* attach in a Section 1983 case, Defendant had to have been acting under color of law.  42 U.S.S. Sec. 1983.

The only sexual encounter occurring within the applicable limitations period is the fellatio Plaintiff performed on Gibson after he picked her up at her friends' house as described in Section II. B. *Claims Accruing Inside, and **Possibly** Inside the Limitations Period.*  There, he walked in, asked her to leave with him ostensibly to have sex, had the residents of the home follow them while they had sex while driving, dropped her off, and the residents drover her home.

Seedy?  Perhaps.  But to each their own.  This does not in any way equate to action taken under color of law.

These allegations are parallel to those in the seminal Eleventh Circuit color of law case, *Almand v. Dekalb County*, 114 F.3d 1204 (11th Cir. 1997).  In entertaining the color of law issue there, the Eleventh Circuit first said the following:

> Federalism is important to this case.  Section 1983 creates no substantive rights;  it merely provides a remedy for deprivations of federal statutory and constitutional rights.  *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir. 1996) (citations omitted).   As the Supreme

Court has cautioned, the "constitutional shoals that confront any attempt to derive from congressional civil rights statutes a body of general federal tort law," demand that we vigilantly safeguard against converting section 1983 into "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 1160, 47 L.Ed. 2d 405 (1976) (internal citations omitted), reh'g denied, 425 U.S. 985, 96 S. Ct. 2194, 48 L.Ed. 2d 811 (1976).   Thus, section 1983 must not supplant state tort law; liability is appropriate solely for violations of federally protected rights. *Baker v. McCollan*, 443 U.S. 137, 145-46, 99 S. Ct. 2689, 2695, 61 L.Ed. 2d 433 (1979).

.    .    .    .

A successful section 1983 action requires that the plaintiff show she was deprived of a federal right by a person acting under color of state law.   *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citing *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155-56, 98 S. Ct. 1729, 1733, 56 L.Ed. 2d 185 (1978)).   A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state. *Edwards v. Wallace Community College*, 49 F.3d 1517, 1522 (11th Cir. 1995) (citing *West v. Atkins*, 487 U.S. 42, 48-50, 108 S. Ct. 2250, 2255, 101 L.Ed. 2d 40 (1988)).   Not all acts by state employees are acts under color of law. *Id*. at 1523. "The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." *Id*. (citing *Monroe v. Pape*, 365 U.S. 167, 183-84, 81 S. Ct. 473, 482, 5 L.Ed. 2d 492 (1961), overruled on other grounds by *Monell v. Department of Social Servs*., 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed. 2d 611 (1978)).

*Almand*, 103 F.3d at 1512.

The Court in *Almand* was faced with a situation where a police officer came to a residence on police business.  Once inside, he pressed she who would become the victim, for sex.  She declined, and he left.  Momentarily.  The officer then

10

busted down the door, came in, and raped her.  The Court found this act did not constitute action taken under color of law.

This Court should find the same here.

### C.  Statute of Limitations

[A] State's personal injury statute of limitations should be applied to all 1983 claims." *Owens v. Okure*, 488 U. S. 235 (109 SC 573, 102 L.Ed.2d 594, 600) (1989) (citations and punctuation omitted); *Wilson v. Garcia*, 471 U. S. 261 (105 SC 1938, 85 L.E.2d 254) (1985). Thus, the applicable limitation period is the two-year period for personal injury set out in O.C.G.A. § 9-3-33. *Williams v. City of Atlanta*, 794 F.2d 624 (11th Cir. 1986).

### D.  Qualified Immunity

Qualified immunity protects government officials unless the law is "'sufficiently clear' that *every* 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (emphasis added) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "[All] but the plainly incompetent or those who knowingly violate the law" are entitled to qualified immunity.  *Courson v. McMillian*, 939 F.2d 1479, 1497 (11th Cir. 1991).  "That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against

the claims made against them in their individual capacities." *Haire v. Thomas*, 219 F. App'x 844, 845 (11th Cir. 2006) (*per curiam*) (quoting *Williams v. Consol. City of Jacksonville*, 381 F.3d 1298, 1299 (11th Cir. 2004)).

For qualified immunity to apply, an official must first establish that he was acting within the scope of his discretionary authority. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010); *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Discretionary authority "include[s] all actions of a government official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017).

Plaintiff specifically claims that all actions on Gibson's part were taken, and advanced because of his role as Captain in the Sheriff's Office. As a supervisor to most, actions effecting the terms and conditions of underlings' employment is a discretionary act within the meaning of the qualified immunity standard. More, this issue was resolved in Gibson's favor at the 12(b)(6) stage.

With this initial hurdle cleared, the burden shifts to the Plaintiff to establish a constitutional violation. *Hendrix v. Bennett*, 423 F.3d 1247, 1250; *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. ) Plaintiffs' burden involves a two-part analysis. The plaintiff must establish that "(1) the officers violated a constitutional right, and (2) that right was clearly established at the time of the

incident." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009). The plaintiff must satisfy both parts of the test in order to overcome qualified immunity. *Keating,* 598 F.3d at 762.

For the right to be "clearly established," "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 550, 196 L. Ed. 2d 463 (2017) (citation and quotation omitted Id). "Clearly established law" should not be defined "at a high level of generality." *Ashcroft v. al–Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). Rather, the clearly established law must be "particularized to the facts of the case." *White*, 137 S. Ct. at 552.

### E.  Plaintiff's Equal Protection Claim Fails

After application of the statute of limitations trims this case down, what we have left is a couple of encounters where Gibson asks Plaintiff for sex and she turns him down.  Then, we have the one encounter where he picks her up from her friends' home to have oral sex while driving.  That's it.

Assuming *arguendo* action under color of law, Defendant is not sure how this equates to a violation of the Equal Protection Clause as discrimination based

on sex.[2] Defendant is entitled to qualified immunity as there is no Constitutional tort, and if there is, no clearly established law was on the books showing a similar bright line had been crossed in similar circumstances.

### F.  Plaintiff's State Law Claims are Barred by Official Immunity

If, as Plaintiff suggests, Gibson was asserting the authority of the law in connection with his actions, then he is entitled to state law "official" immunity for there being no evidence of actual malice or actual intent to harm her.  The doctrine of official immunity, offers public officers and employees limited protection from suit in their personal capacity. *Vidal v. Leavell,* 333 Ga. App. 159 (2015).

Official immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without actual malice or actual intent to injure.  Georgia Courts have distinguished this actual malice from "implied malice, which ... had been defined to mean conduct exhibiting a reckless disregard for human life." (Punctuation and footnote omitted.) *Phillips v. Hanse*, 281 Ga. 133, 136 (2006).

---

[2] It is unclear whether Plaintiff is claiming that Gibson violated some other Constitutional right besides the one based on sex discrimination under the Equal Protection Clause.  Out of an abundance of caution, Defendant notes he is moving for summary judgment on all claims, asserting both that there has been no constitutional tort here, and that he is otherwise entitled to dismissal for his not having violated any clearly established Constitutional right.

> [i]n the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact. Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others. A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be in the intent to cause the harm suffered by the plaintiffs. Likewise, the phrase *actual intent to cause injury…mean[s] an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.*

*Vidal, supra,* 333 Ga. App. at ___.

We cannot imply malice.  And, even if there was an "act purportedly resulting in the claimed injury," there is no evidence that there was any "actual intent to cause harm" to the Plaintiff.  Again, we may not imply malice based on just the underlying tort itself.

Gibson is entitled to official immunity for the state law wrongs alleged here, and is thus likewise entitled to summary judgment.

## IV.  CONCLUSION

Going for a spin with a woman of questionable morals does not a constitutional violation make, even if that occurs while a defendant is somehow acting under color of law.  Defendant Gibson is entitled to Summary Judgment.

Respectfully submitted this 31st day of August, 2018.

**HALL BOOTH SMITH, P.C.**

*/s/ Phillip E. Friduss*
PHILLIP E. FRIDUSS
Georgia Bar No. 277220
JACOB STALVEY O'NEAL
Georgia Bar No. 877316

*Counsel for Defendant Gibson*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel:  404-954-5000
Fax:  404-954-5020
Email:  pfriduss@hallboothsmith.com
Email:  joneal@hallboothsmith.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

| | |
|---|---|
| SUSAN AMANDA BOHANNON, | |
| Plaintiff, | |
| CAPTAIN DAVID GIBSON, in His Individual and Official Capacities; SPALDING COUNTY, GEORGIA, | CIVIL ACTION FILE NO. 3:16-cv-39-TCB |
| Defendants. | |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and foregoing **DEFENDANT GIBSON'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing addressed to:

Eleanor M. Attwood, Esq.
LEGARE, ATTWOOD &
WOLFE, LLC
125 Clairemont Avenue, Suite 380
Decatur, GA  30030

Mary Katz, Esq.
Chambless, Higdon, Richardson,
Katz & Griggs, LLC
Highridge Centre
3920 Arkwright Road
Suite 405
Macon, GA  31210

Respectfully submitted this 31st day of August, 2018.

**HALL BOOTH SMITH, P.C.**

*/s/ Phillip E. Friduss*
PHILLIP E. FRIDUSS
Georgia Bar No. 277220
JACOB STALVEY O'NEAL
Georgia Bar No. 877316

*Counsel for Defendant Gibson*

191 Peachtree Street, N.E.
Suite 2900
Atlanta, GA 30303-1775
Tel:  404-954-5000
Fax:  404-954-5020
Email:  pfriduss@hallboothsmith.com
Email:  joneal@hallboothsmith.com

66203758-1
10532-0002

2